## Swayze v. Endslow

*Cleckner & Fearen,* for plaintiff.
*Keefer, Wood, Allen & Rahal,* for defendant.

ECKMAN, *J.,* October 8, 1980—Presently before the court are the preliminary objections in the nature of a demurrer and a motion to strike filed by plaintiff, Calvin E. Swayze, Jr., in his respective capacities, to the new matter of defendant, Ford Motor Company (Ford).

On November 18, 1978, at approximately 10:30 p.m., Gail I. Swayze (plaintiff's daughter) was operating a 1972 Ford Mustang westbound on Pennsylvania Route 283 in Manheim Township, Lancaster County, Pa. with her grandmother, Anna J. Swayze (plaintiff's mother), as her passenger. The Swayze automobile allegedly stalled in the left lane of the highway and was subsequently struck in the rear by an automobile operated by defendant, James B. Endslow (Endslow). As a result of this collision, the Ford Mustang burst into flames and the occupants of the vehicle died.

On April 9, 1980 plaintiff instituted the present lawsuit against Endslow and Ford seeking compensatory damages in wrongful death and survival ac-

tions and punitive damages. Ford's liability is predicated upon certain alleged manufacturing defects in the Ford Mustang extant at the time of the accident. Ford subsequently filed an answer and new matter alleging, inter alia, that neither of decedents were survived by a spouse or by a parent or child dependent upon either deceased for support. Ford's new matter contains two basic assertions: (1) that under the terms of Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq., a nondependent parent or child cannot maintain an action under the wrongful death act, 12 P.S. § 1602, reenacted and codified at 42 Pa.C.S.A. § 8301, even though Ford's liability is premised upon an exception to the coverage of the No-fault Act*; and (2) that under the provisions of the No-fault Act plaintiff's claim for punitive damages is barred. Plaintiff demurred to Ford's new matter contending that it fails to set forth a legal defense to the claims against Ford.

The demurrer to new matter replaces the prior practice of a motion for want of a sufficient affidavit of defense: 2 Goodrich-Amram 2d § 1017(b):12. As with a demurrer to a complaint, plaintiff's demurrer to Ford's new matter admits all relevant facts sufficiently pleaded therein and all inferences fairly deducible therefrom for purposes of testing the legal sufficiency of the challenged pleadings: Duffee v. Judson, 251 Pa. Superior Ct. 406, 380 A. 2d 843 (1977); Com. ex rel. Allessandroni v. Borough of Tionesta, 87 Dauph. 204 (1967).

Ford submits that the definition of "survivor" in section 103 of the No-fault Act represents a legislative determination to limit the class of beneficiaries of deceased victims of motor vehicle accidents to

*40 P.S. § 1009.301(a)(2).

those actually dependent upon the victim, and that the cause of action for wrongful death has been correspondingly reduced. Plaintiff maintains that his claims are specifically authorized by section 301(a)(2) of the No-fault Act inasmuch as he seeks to recover for injuries arising out of a defect in a motor vehicle. Thus, his right to sue for wrongful death would be unaffected by the No-fault Act. Assuming, for the purposes of the demurrer, that plaintiff was not dependent upon the deceased for support, we must determine whether plaintiff can maintain a wrongful death action. We believe he can.

"Under the Pennsylvania Rules of Civil Procedure only those people specified by law are entitled to bring an action for wrongful death, but nowhere does it say they must prove dependency on the deceased. By statute, those entitled to bring the action are limited to the spouse, children or parents of the deceased. Can the court alter that statute through the wording of the No-fault Act to now require that dependence be shown by these statutorily designated beneficiaries?" Comment, Whose Fault is No-Fault, 41 U. Pitt. L. Rev. 27, 51 (1979).

To conclude that plaintiff must prove "dependency" before he can maintain a wrongful death action requires that we hold that the legislature narrowed the class of persons who could bring actions under the wrongful death act when it enacted the No-fault Act. Such a ruling would require us to assume a partial implied repeal of the wrongful death act in order to justify dismissing plaintiff's demurrer.

Ford maintains that the No-fault Act is an absolute bar to recovery of compensatory damages for wrongful death. A number of common pleas court

decisions suggest that the No-fault Act disallows tort recovery in a wrongful death action unless the damages fit into one of the enumerated exceptions of section 301 of the act, 40 P.S. §1009.301(a). See, e.g., McCullough v. Boswell, 29 Cumb. 64, 68 (1979); Meissner v. Hackenburg, 14 Lyc. 115 (1978). Our research has not disclosed a single case suggesting that tort recovery for wrongful death is disallowed where plaintiff fits into one of these enumerated exceptions as appears in the present case.

In Lewis v. Woodling, 14 Lyc. 188 (1979), the same court that decided the Meissner case, supra, re-examined the effect of the No-fault Act in light of Heffner v. Allstate Ins. Co., 265 Pa. Superior Ct. 181, 401 A. 2d 1160 (1979). In Lewis, the court considered both dicta in Heffner and subsequent analysis of Heffner, particularly Appendix A of the Pennsylvania College of the Judiciary's The Pennsylvania No-fault Act Outline. In that work, the commentator concluded that:

"[Heffner] establishes that in death cases, the spectrum of damages recoverable is precisely as before the No-fault Act . . . [and] that damages in a death action are recoverable precisely as they were before the Act."

In Heffner, supra, the Superior Court stated at 265 Pa. Superior Ct. 192, 401 A. 2d 1165: "Section 18 [of Article III of the Pennsylvania Constitution] may prohibit even the partial abolition of a cause for *wrongful death* or survival." (Emphasis supplied.) This dicta in Heffner strongly suggests that a cause of action for wrongful death is completely unaffected by the No-fault Act.

Paragraph 58 of Ford's new matter alleges that

plaintiff's claim for punitive damages is barred by virtue of the provisions of the No-fault Act. We disagree. Our decision is based upon our interpretation of subsection (b) of section 301 of the act, 40 P.S. § 1009.301(b), which provides: "(b) Nonreimbursable tort fine.—Nothing in this section shall be construed to immunize an individual from liability to pay a fine on the basis of fault in any proceeding based upon any act or omission arising out of the maintenance or use of a motor vehicle; provided, that such fine may not be paid or reimbursed by an insurer or other restoration obligor."

The legislature failed to define "tort fine" within the No-fault Act and our research has failed to disclose an interpretation of the term in statutory or case law. We are guided by the rule, however, that when a statutory term is ambiguous, the court should consider the object sought to be achieved by the legislature, the former law governing the subject and the consequences of a particular interpretation: Com. v. Pennsylvania State University, 463 Pa. 606, 345 A. 2d 695 (1975); Goodman v. Kennedy, 459 Pa. 313, 329 A. 2d 224 (1974).

The No-fault Act is silent as to legislative intent with regard to punitive damages. See 40 P.S. § 1009.102(b). Prior to the passage of the No-fault Act an individual tortfeasor remained personally liable for punitive damages and could not shift this burden to his insurance company: Esmond v. Liscio, 209 Pa. Superior Ct. 200, 224 A. 2d 793 (1966). Under the terms of the No-fault Act the tort fine provided for in section 1009.301(b), supra, may not be paid or reimbursed by the insurer. We can see little reason for the inclusion of this language unless the legislature intended to retain the concept of punitive damages, inasmuch as they were recover-

able under former law: Focht v. Rabada, 217 Pa. Superior Ct. 35, 268 A. 2d 157 (1970).

Construing the No-fault Act as abolishing punitive damages would most certainly lead to inequitable results. The stated purpose of the No-fault Act was to provide loss benefits to accident victims and their survivors. See 40 P.S. §1009.102(b). We believe this purpose would be frustrated by declaring that punitive damages are no longer recoverable by virtue of the No-fault Act. A contrary ruling would give protection to those persons whose outrageous conduct has caused grievous injury to innocent individuals. Accord, Tcheau v. Weimer, 13 D. & C. 3d 243 (1980); Meissner v. Hackenburg, 14 Lyc. 115 (1978).

Accordingly, we enter the following

## ORDER

And now, October 8, 1980, plaintiff's demurrer to defendant Ford Motor Company's new matter is sustained and the new matter is dismissed for failure to set forth a defense. Ford is given leave to file an amended pleading within 20 days from the date of this order.