**THETA PRODUCTS, INC. d/b/a/
Sprague Industries**

v.

**ZIPPO MANUFACTURING
COMPANY.**

No. 98–600ML.

United States District Court,
D. Rhode Island.

July 28, 1999.

Guido R. Salvadore, Law Offices of Guido R. Salvadore, Providence, RI, for plaintiff.

W. James McKay, John A. Tarantino, Adler Pollock & Sheehan, Providence, RI, Brian T. Must, Gregg Orsag, Sweeney Metz Fox McGrann & Schermer, Pittsburg, PA, for defendant.

## MEMORANDUM AND ORDER

LISI, District Judge.

The plaintiff in this action, Theta Products, Inc. ("Theta"), is a Rhode Island corporation. The defendant in this action, Zippo Manufacturing Company ("Zippo"), is a Pennsylvania corporation. This case is before the Court for consideration of Zippo's motion to dismiss Theta's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The Court conducted a hearing on the motion and the matter is now in order for decision. For the reasons set forth below, Zippo's motion is denied.

### I. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure, provides for the dismissal of actions which "fail to state a claim upon which relief can be granted." When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court "should not grant the motion unless it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996). The court also accepts the well-pleaded facts in the complaint as true and construes those facts in a light most favorable to Theta. *See Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987).

With this framework in place, this Court turns to Theta's complaint and the parties' arguments.

### II. Facts

Heeding the admonition of the United States Court of Appeals for the First Circuit, the court assumes the truth of the allegations in the complaint and construes the facts in a light most favorable to Theta.

According to the allegations in Theta's complaint "an agent of Zippo approached the Plaintiff in late November or early December 1997, and asked if Theta was interested in using Zippo as a distributor of [Theta's] JADCO [1] division's advertising specialty products." After preliminary discussions, Zippo solicited Theta about becoming Theta's sole and exclusive distributor of those products. Theta accepted Zippo's offer, but only on the condition that Zippo would guarantee to purchase $2,000,000 to $3,000,000 worth of JADCO products annually. Zippo agreed to The-

---

1. JADCO, a division of Theta, was engaged in the advertising specialty business and was the sole focus of Zippo's business interest with Theta.

ta's terms. Discussions which resulted in a final "agreement or understanding" between the parties followed.

In late December 1997, Theta began to implement the new relationship with Zippo in its corporate activity. At that time, Zippo asked Theta to relinquish its position at trade shows, to cease producing catalogs, and not to advertise in trade magazines. Theta responded to these requests by surrendering its position at a Dallas, Texas trade show, not producing a 1998 catalog, and not advertising in trade magazines. After Theta had expended substantial time and resources relying upon Zippo's requests and implementing the new distributorship agreement, Zippo refused to honor its commitments.

### III. Analysis

#### A. *Introduction*

Theta's complaint advances the following claims for relief: breach of contract, anticipatory breach of contract, reliance, punitive damages, services rendered, and the tort of fraud in the inducement. In its motion to dismiss Theta's contract-related claims, Zippo raises the affirmative defense of the statute of frauds. In its motion to dismiss Theta's tort claim of fraud in the inducement, Zippo asserts that applicable law bars any recovery in tort for actions arising out of a breach of contract.

Although the parties have not specifically argued the choice-of-law principles that inhere in this case, both Pennsylvania and Rhode Island have adopted the relevant provision of the Uniform Commercial Code ("U.C.C.") [2], a fact which obviates the need for a determination of the issue at this juncture. Moreover, no conflict appears in the relevant case law with respect to the provision. Theta's complaint also pleads sufficient facts which may support a tort-based claim under the law of either state.

Therefore, this Court will not undertake a choice of law analysis at this time.

#### B. *Contract-related Claims*

According to the facts in the complaint, Theta alleges that Zippo breached an oral distributorship agreement. At no point in its complaint did Theta mention that the parties memorialized their agreement in writing. Pursuant to the agreement, Zippo promised to purchase between $2,000,-000 and $3,000,000 worth of JADCO products annually. In return for that promise, Zippo would receive the exclusive rights to distribute JADCO's advertising specialty products. When Zippo failed to honor the alleged agreement, Theta commenced this action advancing three claims for recovery grounded in the law of contract: breach of contract, anticipatory breach of contract, and services rendered. Zippo raised the defense of the statute of frauds in its motion to dismiss these contract-related claims. *See Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038, 1043 (E.D.Pa.1994) (noting that the affirmative defense of the statute of frauds may be raised by a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if the defect appears on the face of the pleading) (quoting *Continental Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir.1942)). *See also ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 858 (3d Cir.1994) (noting it was acceptable for the defendant to file a 12(b)(6) motion instead of answering the complaint).

■ Because Theta's complaint alleges an oral agreement regarding the distribution of at least $2,000,000 worth of advertising specialty products, the agreement falls within the ambit of Article Two of the U.C.C. and its applicable statute of frauds provision. This provision requires any agreement for the sale of goods over $500 to be in writing. *See* § 6A–2–201.

---

**2.** This provision has been adopted by both Pennsylvania and Rhode Island at 13 Pa.Con. Stat.Ann. § 2201 (West 1984) and R.I. Gen. Laws § 6A–2–201 (1956). Because they are identical provisions, the Court will refer only to the Rhode Island provision when discussing the statute of frauds' application to the sale of goods.

An agreement which does not satisfy the writing requirement of § 6A–2–201 may still be enforced if it meets one of the three statutory exceptions. *See* § 6A–2–201(3)(a)–(c). Section 6A–2–201(3)(b) provides that an oral contract for the sale of goods is enforceable if "the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made."[3] In order for this provision of the U.C.C. to function, the plaintiff must have an opportunity to obtain an admission from the defendant. *See ALA,* 29 F.3d at 862.

In *ALA,* a buyer brought suit against a corporation claiming that the corporation breached an alleged agreement to sell the buyer a controlling block of its common stock. Instead of answering the complaint, the corporation filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the defendant corporation's 12(b)(6) motion on the ground that § 8–319 of the U.C.C., the statute of frauds for securities transactions, made the agreement unenforceable. On appeal, the Third Circuit reversed the lower court's dismissal of the buyer's complaint. The court held that, according to § 8–319, plaintiffs in breach of contract suits dealing with securities transactions should be given an opportunity to utilize the admission exception to the statute of frauds before their complaint is dismissed on 12(b)(6) grounds. *See id.* The court reached its decision by focusing on the evidentiary purpose of the statute of frauds—to protect people from fraudulent claims that a contract did or did not exist.

*See id.* at 861. To satisfy this purpose, "the plaintiff must have some opportunity to obtain an admission from the defendant." *Id.* at 862. *See also Duffee v. Judson,* 251 Pa.Super. 406, 380 A.2d 843, 847 (1977) ("Certainly the language of 2–201(3)(b) is broad enough to require that all cases go to trial so far as a statute of frauds defense is concerned, for 2–201(3)(b) contemplates the possibility that an oral contract within the statute may become enforceable by virtue of an admission in 'open court' on cross-examination."), *cited in ALA,* 29 F.3d at 862. By allowing a defendant to dismiss a case on a Rule 12(b)(6) motion before the plaintiff has had an opportunity to elicit an admission, would "potentially allow a defendant to avoid the obligations of an oral contract into which he or she actually entered." *ALA,* 29 F.3d at 862.

In the case at bar, Zippo's statute of frauds defense originates under Article Two of the U.C.C. Though Zippo's defense arises under § 6A–2–201, not *ALA*'s § 8–319, the two provisions are textually and functionally identical. To dismiss Theta's complaint at this juncture, would subvert the purpose of the admission exception to § 6A–2–201 and allow Zippo to escape the evidentiary underpinnings of the statute of frauds.

The strictures of the Rule 12(b)(6) standard of review and the nascent quality of this litigation do not permit a decision in Zippo's favor. To grant Zippo's motion to dismiss would "allow the defendant to defeat a cause of action on an oral contract before the plaintiff has any opportunity to

---

**3.** § 6A–2–201 reads in pertinent part:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph be-

yond the quantity of goods shown in such writing.

. . . . .

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

. . . . .

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted....

seek an admission that a contract existed." *Id.* Therefore, the Court finds that dismissal of the action based on § 6A–2–201 without allowing Theta a more complete opportunity to use the discovery process to probe the § 6A–2–201(3)(b) exception would be wholly inappropriate.

## C. *Tort Claim*

■ Theta's complaint also pleads various tort-based theories of recovery. Theta specifically alleges that Zippo knowingly made false representations to induce Theta's reliance on a fictitious agreement. Theta claims that these alleged false representations support a claim under Pennsylvania law for fraud in the inducement or a claim under Rhode Island law for common law deceit. *See Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 622 (1st Cir.1988) (noting that the fact that plaintiff plead the wrong legal theory did not preclude relief under another theory).

■ Under Pennsylvania law, "one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation." *Savitz v. Weinstein*, 395 Pa. 173, 149 A.2d 110, 113 (1959) (quoting Restatement of Torts § 525). *See also Edmondson v. Zetusky*, 674 A.2d 760, 765 (Pa. Comwlth.1996) (citing *Savitz*, 149 A.2d at 113). Nevertheless, if the alleged fraud occurred in the course of performing a contractual agreement, Pennsylvania courts will examine the fraud claim and determine whether the "gist of the action" sounds in contract or tort. *See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds*, 40 F.Supp.2d 644, 651 (W.D.Pa.1999). The court will only allow the tort claim if "the contract is 'collateral' to conduct that is primarily tortious." *Id.* The purpose of this examination is to prevent a plaintiff from asserting a breach of contract claim as a

tort claim. *See id.* at 652. In the present case, Zippo argues that Theta's fraud in the inducement claim is interwoven with its breach of contract claims, a fact which precludes Theta from pursuing its fraud claim. This Court disagrees.

Theta's allegations appear to allege facts that, if true, may state a claim for fraud that is extrinsic to the terms of the agreement. Because the nature of the duty that Zippo may have violated arises not from the contract but from the principles of fair dealing, Theta's action based on that violation sounds in tort. *See Closed Circuit Corp. v. Jerrold Elecs. Corp.*, 426 F.Supp. 361, 364 (E.D.Pa.1977). Theta is not alleging fraud in relation to the specifications of the contract; rather, Theta claims that Zippo fraudulently induced it into relying on an agreement that Zippo never intended to honor. Since Theta sets forth sufficient facts to state a claim of fraud collateral to the contract in accordance with Pennsylvania law, the claim survives 12(b)(6) review.

■ Under Rhode Island law, it appears that Theta's complaint may state a claim in tort for the common law action of deceit. In order to state a common law action in tort for deceit in this state, the plaintiff must prove that the defendant, "in making the statement at issue, knew it to be false and intended to deceive, thereby inducing defendants to rely on the statements to their detriment." *Katz v. Prete*, 459 A.2d 81, 84 (R.I.1983) (citing *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730, 733 (1970)). If this court could conclude from the face of the complaint that the parties had entered a valid contractual agreement, Theta would have to pursue its claim under one of two possible theories. It could sue in contract to rescind the agreement or it could affirm the agreement and sue in tort for fraud in the inducement. *See Travers v. Spidell*, 682 A.2d 471, 472 (R.I.1996) (citing *Halpert*, 267 A.2d at 733). Because Theta may have stated a claim for relief that sounds in the common law tort of deceit, the court

does not reach these questions that pertain to the election of remedies.

The possibility that Theta may be entitled to relief under Rhode Island's common law tort of deceit is sufficient to withstand Rule 12(b)(6) scrutiny. In short, Zippo's motion to dismiss Theta's tort claims pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

### D. *Claim for Damages*

 Theta also makes a claim for an award of punitive damages. According to Rhode Island law, the standard for imposing punitive damages is "rigorous and will be satisfied only in instances wherein a defendant's conduct requires deterrence and punishment over and above that provided in an award of compensatory damages." *Palmisano v. Toth*, 624 A.2d 314, 318 (R.I.1993). Pennsylvania provides a similar standard by awarding punitive damages for conduct "that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Karpiak v. Russo*, 450 Pa.Super. 471, 676 A.2d 270, 275 (1996) (citing Restatement (Second) of Torts § 908(2)). Theta's tort claim alleges that Zippo intentionally induced reliance on an agreement which Zippo never intended to honor. Because the facts of this claim may provide evidence of Zippo's reckless indifference toward Theta, the claim for punitive damages survives the Rule 12(b)(6) challenge.

### IV. Conclusion

For the reasons stated herein, Zippo's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

SO ORDERED.